IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 1:24-cr-00564-JFA |
| | ) | |
| | ) | |
| -vs- | ) | |
| | ) | MOTION FOR DISCOVERY, |
| | ) | INSPECTION AND |
| DONNELL A. JONES | ) | EVIDENCE PRESERVATION |
| | ) | |

Donnell A. Jones ("Defendant"), by and through undersigned counsel, requests that the United States take immediate steps to preserve and provide any and all evidence including all evidence that is (1) favorable to the Defendant; (2) which could tend to show that Defendant is not guilty of the charge(s); (3) which would be helpful in the preparation of a defense; and/or (4) which would be mitigating to the defense known to anyone acting on the State's behalf in this case, including, but not limited to law enforcement and/or any state/governmental agency involved in this case.

This motion is made pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972); *United States v. Bagley*, 473 U.S. 667 (1985); *Kyles v. Whitley*, 514 U.S. 419 (1995), *Strickler v. Greene*, 527 U.S. 263 (1999); and Rule 5 of the South Carolina Rules of Criminal Procedure should there be any related State charges applicable to this case or joint investigations involving State prosecutors or investigators.

This request for preservation and disclosure includes, but is not limited to, the following:

I.     <u>EVIDENCE</u>

1. **Memorialization of any witness, subject, and/or target statement(s) taken by any law enforcement officer and/or member of the prosecution team in this investigation. This request includes, but is not limited to, anyone who was asked about or who mentioned the Defendant's name.**

2. **Any and all subpoenaed and/or otherwise obtained documents, communications, photographs, recordings, and records pertaining to this case. Defendant further requests a certification attached to every record produced detailing how it was provided to or obtained by the State and/or law enforcement.**

3. **Any and all CAD reports, EMS reports, 911 calls, and/or law enforcement reports that in any way relate to this case.**

4. **Any and all cell phone records that in any way relate to this case.**

5. **Any and all social media records including, but not limited to, Twitter, Facebook, Snapchat, Instagram, Yik Yak, MeetMe, Tinder, Whisper, and/or Tumblr, that in any way relate to this case.**

6. **Any and all audio and video recordings that in any way relate to this case. This includes, but is not limited to, body cameras and/or recording devices, dash cameras and/or recording devices, in-car cameras and/or recording devices, hidden cameras and/or recording devices, and/or cell phone and/or tablet photographs, videos, and/or audio recordings.**

7. **Any and all multi-jurisdictional and/or operating agreements that in any way relate to this case.**

8. **All statements, confessions, and notes taken as a result of discussions with any witness concerning this case which would tend to show that Defendant is not guilty of the charges against him.**

9. **All evidence tending to show that any of the acts and/or conduct by Defendant was done without criminal intent.**

10. **Any relevant written or recorded statements made by Defendant, or copies thereof, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the State.**

11. **The substance of any oral statement by Defendant which the State may offer in evidence at the trial.**

12. **All books, papers, documents, affidavits, photographs, recordings, social media records, evidence and/or crime scene logs, and/or tangible objects which are in the possession, custody, or control of the State, and are relevant to this case, including any handwritten notes taken by any investigating officers.**

13. **A list of all physical and/or scientific evidence found, seized, and/or inventoried as a result of any search and/or investigation pertaining to this case, including, but not limited to, itemization of all clothing, physical evidence, and/or scientific evidence of this investigation.**

14. **The results of any and all physical examinations, mental examinations, investigative techniques, scientific tests, and/or analytical tests, or copies thereof, <u>including test(s) with negative findings</u>, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State.**

15. **Any physical evidence, testing, or reports tending to make guilt less likely.** *See Barbee v. Warden, Maryland Penitentiary,* 331 F.2d 842, 844, 846 (4th Cir. 1964) (holding that

nondisclosure of police ballistics and fingerprint tests violated defendant's due process rights even though there was no evidence that the prosecutor was aware that the reports existed); *See also Benn v. Lambert*, 283 F.3d 1040, 1060 (9th Cir. 2002) (failure to disclose investigative report that fire was not caused by an arson); *Sawyer v. Hofbauer*, 299 F.3d 605 (6th Cir. 2002) (testing withheld by prosecution demonstrated that semen stain in forced fellatio case belonged to a person different than the defendant); *Mitchell v. Gibson*, 262 F.3d 1036, 1063-64 (10th Cir. 2001) (state actively withheld and misled about DNA testing by different lab that completely contradicted forensic testimony of police examiner at trial); *United States ex rel. Smith v. Fairman*, 769 F.2d 386, 391 (7th Cir. 1985) (withheld ballistics results showing that alleged firearm was inoperable); *Johnson v. State*, 38 S.W.3D 52, 56-58 (Tenn. 2001) (withheld police report concluding that bullet came from different direction than where defendant was standing); *State v. Larimore*, 17 S.W.3d 87 (Ark. 2000)(withheld original medical examiner opinion on time of death).

## II.    WITNESSES

1. **The names, present addresses, and present telephone numbers of any and all persons who have any knowledge of the existence of any evidence which might be relevant to acts charged as a crime in a warrant and/or indictment against the Defendant, including all persons who (a) will be witnesses for the State upon the trial of this case or (b) will not be called as witnesses by the State.**

2. **The names and purported testimony of any expert witness the State may call in this case.**

3. **Inconsistent statements by government witnesses regarding the facts of the crime or the alleged conduct of the defendant.** *Kyles*, 514 U.S. at 445 (*Brady* violated when prosecution failed to disclose multiple inconsistent statements by key witness); *see also id*. at 444 ("[T]he evolution over time of a given eyewitness's description can be fatal to his reliability"); *United States v. Kohring*, 637 F.3d 895, 906 (9th Cir. 2010) (reversing conviction for extortion and bribery where prosecution suppressed, *inter alia*, notes "that tend to show [prosecution witness] had difficulty remembering the details of key events," for example, the amounts of cash payments, or whether any payment was made at all on certain occasions.); *United States v. Quinn*, 537 F.Supp.2d 99, 109 (D.D.C. 2008) ('the government itself concedes that when it has information about a witness who it is planning to call in its case in chief that indicates the witness has lied to the government about material matters during the course of the investigation, that information is *Brady* material.").

4. **Statements by others that are inconsistent with statements of government witnesses regarding the facts of the crime or the alleged conduct of the defendant.** *Boyd v. United States*, 908 A.2d 39, 54-56 (D.C. 2006) (statements of witnesses who saw three rather than four persons present at the time of the abduction, contradicting government witness's account, constituted *Brady* information that should have been disclosed to the defense); *Sykes v. United States*, 897 A.2d 769, 778-79 (D.C. 2006) (grand jury testimony of two witnesses contradicting government informant's account of defendant's alleged confession constituted *Brady* information that should have been disclosed to the defense); *see also Norton v. Spencer*,

351 F.3d 622, 634-35 (5th Cir. 1997) (*Brady* violation where government failed to disclose interview with individual who was not called as a witness at trial that undermined credibility of witness whose testimony was key to one of the counts of conviction).

5. **Any information that relates to the potential mental or physical impairment of any witness.** *Perez*, 968 A.2d at 65 (government should have disclosed pretrial key witness's statements to the grand jury that he was drunk at the time of the incident and had no memory of it); *see also Silva v. Brown*, 416 F.3d 980, 984 (9th Cir. 2005) (failure to disclose deal that prosecution agreed with witness to prevent the witness from undergoing a psychiatric examination prior to testifying); *East v. Johnson*, 123 F.3d 235, 239-40 (5th Cir. 1997) (failure to disclose complete criminal record that would have led to information concerning serious mental health problems of key witness); *United States v. Smith*, 77 F.3d 511, 513-17 (D.C. Cir. 1996) (failure to disclose dismissal of state charges in exchange for federal testimony and mental health history of witness concerning depression).

6. **Any information relating to potential witness bias, including but not limited to:**

    (a) **benefits received by a witness;** *Banks v. Dretke*, 540 U.S. 668, 702-03 (2004) (*Brady* violation when government failed to disclose witness status as paid informant); *Giglio v. United States*, 405 U.S. 150 (1972) (*Brady* violation where government failed to disclose non-prosecution agreement with cooperating witness); DAG Guidance Memo, Step 1.B.7 (requiring disclosure of benefits to any testifying witness including but not limited to: "[d]ropped or reduced charges, [i]mmunity, [e]xpectations of…reduce[d]…sentence[s], [a]ssistance in…[other] criminal proceeding[s], [c]onsiderations regarding forfeiture of assets, [s]tays of deportation or other immigration status considerations, S-Visas, [m]onetary benefits, [n]on-prosecution agreements, [l]etters to other law enforcement officials (…[including] parole boards), setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf, [r]elocation assistance, [c]onsideration or benefits to…third parties"); *Lindsay v. United States*, 911 A.2d 824, 839 (D.C. 2006) (government made "substantially incomplete" *Brady* disclosures pretrial; "[e]ach of the eyewitnesses had been treated favorably by the government in exchange for their testimony by garnering pleas agreements on other charges or being paid with federal witness vouchers, but impeachment evidence on three of the four eyewitnesses was not disclosed before trial and had to be supplemented by the government as the trial progressed"); *see also Maxwell v. Rose*, 628 F.3d 486 (9th Cir. 2010) (*Brady* violation where prosecution failed to disclose details of informant's plea bargaining process—specifically, the fact that he independently negotiated a separate deal with the prosecution that was more favorable than the deal negotiated by his lawyer; information contradicted his representations of naiveté and indicated he was a sophisticated jailhouse informant); *Robinson v. Mills*, 592 F.3d 730, 738 (6th Cir. 2010) (*Brady* violation where prosecution suppressed evidence of "State's star witness" status as a confidential informant); *Tassin v. Cain*, 517 F.3d 770, 778 (5th Cir. 2008) (*Brady* violation in the absence of an express promise).

    (b) **information that calls into question efforts to present the witness as neutral and disinterested**.

- (c) **impeachment information that officers or others had "fed" parts of a witness's story to the witness during questioning;**

- (d) **other known conditions that could affect the witness's bias such as - animosity toward defendant, animosity toward a group of which the defendant is a member or with which defendant is affiliated, relationship with the victim, known but uncharged criminal conduct.** *United States v. Kohring*, 637 F.3d 895 (9th Cir. 2011) (reversing conviction where prosecution failed to disclose that key witness to alleged extortion and bribery scheme was under investigation for sexual exploitation of minors which shed light on his incentive to cooperate with law enforcement); *Schledwitz v. United States*, 169 F.3d 1003, 1015-16 (6th Cir. 1999) (*Brady* violation when government presented witness as disinterested expert but witness had been actively involved in the criminal investigation).

- (e) **Any information related to a witness' dishonesty and/or criminality, including but not limited to: (a) acts of a witness that are probative of untruthfulness; (b) a copy of any criminal record of any witness, including witness's prison records and probation records, as well as a written description of any criminal cases pending against any witness; and/or (c) any information concerning a law enforcement officer's misconduct and/or abuse of authority.** *See, e.g.*, *Wolfe v. Clarke*, 691 F.3d 410 (4th Cir. 2012) (reversing conviction and death sentence and emphasizing "momentous" nature of *Brady* violation when officers not only told the witness that he could avoid the death penalty by implicating the person who allegedly hired him, but also mentioned to the witness that officers thought Justin Wolfe was involved, thereby potentially feeding the witness the person was supposed to inculpate.)

7. **Any information related to a witness' dishonesty and/or criminality.**

    (a) **Acts of a witness that are probative of untruthfulness.** *United States v. Cuffie*, 80 F.3d 514, 515 (D.C. Cir. 1996) (prosecution violated its Brady obligations where it failed to disclose fact of key witness's perjury in a Superior Court proceeding to expunge the arrest record of his cousin); *United States v. Quinn*, 537 F.Supp.2d 99, 109 (D.D.C. 2008) (government conceded and court held that when the prosecution "has information about a witness who it is planning to call in its case in chief that indicates the witness has lied to the government about material matter during the course of the investigation, that information is *Brady* material"); *Bennett v. United States*, 797 A.2d 1251, 1255-58 (D.C. 2002) (*Brady* violation because government suppressed information that key witness had lied to the police or the grand jury about an unrelated murder); *see also Benn v. Lambert*, 283 F.3d 1040, 1055 (9th Cir. 2002) (*Brady* violation for failing to disclose prior acts of theft and lying by government witness and citing cases noting that such failures are material even if separate impeachment evidence concerning such a witness is disclosed).

    (b) **A copy of any criminal record of any witness, including witness's prison records and probation records, as well as a written description of any criminal cases**

**pending against any witness.** *Lewis v. United States*, 408 A.2d 303 (D.C. 1978) (setting up prophylactic rule concerning disclosure of criminal histories of prosecution witnesses).

(c) **Any information concerning a law enforcement officer's misconduct and/or abuse of authority:** *Cf. Farley v. United States*, 694 A.2d 887, 890 (D.C. 1997) (complaint regarding police officer to Civilian Complaint Review Board could be *Brady* information, observing complaint procedures require officer to be notified of complaint against him and his actual knowledge could be imputed to prosecution team, and remanding to determine if suppression of complaint in this case violated *Brady*); *Bullock v. United States*, 709 A.2d 87, 93 (D.C. 1998) (inviting defendant to file §23-110 to litigate whether suppression of pending internal investigation of law enforcement officer violated *Brady*); *see also United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (prosecutor must search internal police files for possible impeachment information about officer important to the case); *Nuckols v. Gibson*, 233 F.3d 1261 (10th Cir. 2000) (*Brady* violation when prosecutor withheld investigation into officer's sleeping on the job, role in thefts from police, and other nefarious firearms transactions because his credibility was key to suppression hearing on *Miranda*); *United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1973) (requiring review of Postal Officer's personnel file for impeachment evidence when he was prosecution's key witness): International Association of Chiefs of Police ("IACP") Model *Brady* Policy IV.B.1.1 (recommending disclosure of "[a]n officer's excessive use of force, untruthfulness, dishonesty, bias or misconduct in conjunction with his or her service as a law enforcement officer.").

8. **Any information regarding the failure of any percipient witness to make a positive identification of a defendant:**

    (a) **If the perpetrator is known to the witness, in any statement regarding the crime.**
    *Shelton v. United States*, 26 A.3d 216, 222 (D.C. 2011) (government violated *Brady* when it failed to disclose that complainant, who knew defendant, initially stated he was unable to identify the perpetrator); *see also, e.g., Slutzker v. Johnson*, 393 F.3d 373, 387 (3d Cir. 2004) (witness statement that man she saw talking to decedent before the murder was not defendant was *Brady* information).

    (b) **If a stranger identification, in any identification procedure.**
    *Mackabee v. United States*, 29 A.3d 952 (D.C. 2011) (witness's failure to identify defendant in a photo array coupled with statement that the shooter "sort of look[ed] like" the photographs of two other people in the photo array was exculpatory); *Jackson v. United States*, 650 A.2d 659. 661 n. 4 (D.C. 1994) (government "wisely conceded" that failure to disclose witness's inability to identify defendant coupled with the witnesses description of the perpetrator that was inconsistent with defendant "violated both the letter and spirit of *Brady*"); *see also Boyette v. Lefevre*, 246 F.3d 76, 85 (2nd Cir. 2001) (the

7

fact that complainant's "description of her attacker did not fit [defendant] and that she had not been able to identify [defendant] from photos" constituted *Brady* information).

9. **Any eyewitness's description of the perpetrator which differs from the defendant's appearance.** *Kyles*, 514 U.S. at 441-44 (*Brady* violated when prosecution failed to disclose eyewitness descriptions of perpetrator that were not consistent with defendant); *Mackabee*, 2011 WL 4975109 at *3 & n.11 (observing that Court was "at a loss to understand th[e] reasoning" of the prosecution that videotaped statement of witness who gave police "a physical description [of the shooter] that could not match Mr. Mackabee" "was not the kind of exculpatory information that we would immediately go around and turn over"); *id*. At *5 (acknowledging inconsistent description "was exculpatory"); *Miller*, 14 A.3d at 1109 ("There can be no doubt—and all members of the court agree—that the government had an obligation under *Brady* to disclose" information that shooter was left handed); *Curry*, 658 A.2d at 195, 197 (government conceded error when it failed to disclose until two days prior to trial statements of eyewitness whose description of the perpetrator was inconsistent with defendant); *see also McDowell v. Dixon,* 858 F.2d 945, 949 (4th Cir. 1988) (*Brady* violated by failure to disclose that initial witness statement had indicated perpetrator was a different race than defendant); *White v. Helling*, 194 F.3d 937 (8th Cir. 1999) (*Brady* violation when prosecutor failed to disclose that witness had initially identified another person as performing key actions during the robbery).

10. **Any eyewitness' initial inability to provide a description of the perpetrator.** *Smith v. Cain*, No. 10-8145, 2012 U.S. LEXIS 576 (evidence "plainly material" when only eyewitness, who had testified at the murder trial that he was sure of his identification, had told police the night of the murder and a few days later that he could not make an identification"); *Shelton*, 26 A.3d at 222-23 (government had an obligation to disclose pretrial that complainant, who positively identified defendant as the shooter at trial, initially told police "I don't know or I didn't see or all's I saw was a dark colored someone shoot at me from a dark-colored car"); *Lindsey v. King*, 769 F.2d 1034, 1040 (5th Cir. 1985) (forceful condemnation of prosecutor's conduct , which was "beyond reprehension" for failing to disclose police report taken "eight days after the murder that [witness] did not see the assailant's face, that he saw only his silhouette, and that because of this circumstance viewing photographs would be useless," where witness testified at trial that "he did see Lindsey's face" and that he was sure on the night of the murder that he could identify the shooter).

   III.     <u>DEFENSES</u>

1. **Any information that tends to cast doubt on the defendant's guilt with respect to any essential element in any charged count.** *Brady*, 373 U.S. at 87.

2. **Any information that tends to support any affirmative defense.** *Mahler v. Kaylo*, 537 F.3d 494, 500-01 (5th Cir. 2008) (*Brady* violated where prosecution failed to disclose witness statements that decedent and defendant were actively fighting when gun went off); *United States v. Spagnoulo*, 960 F.2d 990 (11th Cir. 1992) (government withheld psychiatric report demonstrating that defendant may have a disorder, which could have made an insanity defense

8

viable and otherwise changed defense strategy); *Finley v. Johnson*, 243 F.3d 215 (5th Cir. 2001) (prosecution withheld fact that there had been a restraining order placed against victim to protect his wife and child, which would have supported defendant's affirmative defense that he kidnapped victim in order to protect the victim's wife and child); *United States v. Udechukwu*, 11 F.3d 1101, 1105 (1st Cir. 1993) (government withheld information that person defendant claimed coerced her was a known, prominent drug-trafficker and government target).

3. **Any information that links someone other than the defendant to the crime.** *See United States v. Ellis*, 121 F.3d 908, 914-916 (4th Cir. 1997) (*Brady* violation where prosecution failed to provide undisclosed CB 302 which implicated that the witness falsely identified defendant after defense made claim for all exculpatory evidence one month before trial); *See also Miller*, 14 A.3d at 1109, 1112 ("There can be no doubt—and all members of the court agree—that the government had an obligation under *Brady* to disclose" information that shooter was left handed in case where defense sought to show that government witness, who was left handed, was the actual perpetrator); *Jernigan*, 492 F.3d at 1053 (*Brady* violation where prosecution failed to "disclos[e] the existence of a phenotypically similar bank robber who had been robbing banks in the same area after Jernigan's incarceration"); *Trammell v. McKune*, 485 F.3d 546, 551-52 (10th Cir. 2007) (*Brady* violation where prosecution failed to disclose gas station receipts that supported defendant's trial theory linking another person to the crime); *Jamison v. Collins*, 291 F.3d 380, 389 (6th Cir. 2002) (*Brady* violated because prosecution failed to disclose "positive identification of different suspects by an eyewitness to the crime"); *DiLosa v. Cain*, 279 F.3d 259, 265 (5th Cir. 2002) (prosecution withheld foreign hair samples and evidence of another neighborhood break-in that supported defendant's assertion that two men robbed his house and killed his wife; this was particularly "unsettling" because the state had argued that the prosecution theory had to be credited in the absence of any evidence of a break-in—evidence it knew existed); *Mendez v. Artuz*, 303 F.3d 411, 412-13 (2d Cir. 2002) (prosecutors withheld evidence that contradicted their motive theory of the case and established that someone else had a motive); *Scott v. Mullin*, 303 F.3d 1222 (10th Cir. 2002) (state withheld internal prison communication stating that another inmate had observed a different person commit the stabbing); *Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995) (Failure to disclose information indicating that uncharged third party had committed the offense); *Miller v. Anglikerm*, 848 F.2d 1312 (2d Cir. 1988) (state withheld significant evidence of investigation into the guilt of another, which warranted reversal even though petitioner had chosen, without that exculpatory information, to plead not guilty by reason of insanity); *Bowen v. Maynard*, 799 F.2d 593, 612 (10th Cir. Okla. 1986) (granting habeas relief because withheld evidence of a different suspect created a "reasonable doubt" and "in the hands of the defense, it could have been used to uncover other leads and defense theories and to discredit the police investigation of the murders").

4. **Any information that tends to cast doubt on the admissibility or probative value of the government's evidence.** *Jean v. Collins*, 107 F.3d 1111, 1115 (4th Cir. 1997) (recognizing that the Supreme Court's *Giglio* decision meant that evidence that tended to cast doubt should be disclosed under Brady); *See also, Gaither v. United States*, 759 A.2d 655, 663 (D.C. 2003) (remanding because motions court "ignored the *Brady* consequences" of allegations of use of suggestive identification procedures by the police); *mandate recalled and amended by* 816

A.2d 791 (D.C. 2003) (again directing remand); *Smith*, 666 A.2d at 1224-25 (information that could have undermined admission of statement as excited utterance "require[d] disclosure under *Brady*").

5. **Any information that tends to support the defendant's pretrial constitutional motions or tends to show that Defendant's Constitutional rights were violated.** *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (*Brady* violated where prosecution suppressed report that would have demonstrated that defendants had Fourth Amendment standing to challenge search); *Nuckols v. Gibson*, 233 F.3d 1261 (10th Cir. 2000) (*Brady* violation when government failed to disclose allegations of theft and sleeping on the job of police officer whose testimony was crucial to the issue of whether a *Miranda* violation had occurred—and thus, crucial to the admissibility of the confession).

6. **Any information that tends to diminish culpability and/or support a lesser punishment.** *Cone v. Bell*, 129 S. Ct. 1769, 1783-86 (2009) (evidence that defendant "was impaired by his use of drugs around the time his crimes were committed" constituted *Brady* information; remand to assess its materiality as mitigation evidence in sentencing); *Brady*, 373 U.S. at 87 (requiring disclosure of information that is "favorable…and material…to…punishment"); *United States v. Quinn*, 537 F.Supp.2d 99 (D.D.C. 2008) (prosecution's plea deal with another target was *Brady* information where it showed sentencing disparity).

The above-referenced information is critical to the defense of this case. The Defendant requests that all disclosures be made immediately and that the United States be under a continuing duty to disclose as it receives additional testimony, evidence, and/or other information.

Respectfully submitted,

 /s/Nathan S. Williams.
Nathan S. Williams (Fed. ID 10400)
Law Offices of Nathan S. Williams
266 W. Coleman Blvd., Ste. 204
Mt. Pleasant, South Carolina 29464
(843) 473-7000
nathan@scfederaldefense.com

Mt. Pleasant, South Carolina

August 5, 2024.